UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Bryant Rogers,

                              Plaintiff,

       v.

Commissioner of Social Security,[1]

                              Defendant.

**Decision and Order**

17-CV-541 HBS
(Consent)

---

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 8, 10.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

---

[1] The Clerk of the Court is directed to conform the caption of the case to the caption of this decision.

substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

2

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Here, one of plaintiff's arguments concerns inability to afford treatment. According to plaintiff, three different treating physicians—Dr. Michael Calabrese, Dr. Graham Huckell, and Dr. Joseph Buran—made clinical findings of pain and injuries and offered opinions that he would not be able to return to work. (Dkt. No. 8-1 at 14.) Nonetheless, the ALJ discounted the findings of these physicians in large part because of a gap in plaintiff's treatment that lasted over a year. As plaintiff argues,

> An ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without considering explanations the individual may provide, or other information in the case record that may explain infrequent treatment. *Hill v. Astrue*, 2013 WL 5472036 *10 (W.D.N.Y. Sept. 30, 2013) (quoting McGregor v. Commissioner of Soc. Sec., 2012 WL 2873559 at 10 (N.D.N.Y. June 1, 2012). An ALJ is not allowed to penalize a claimant for being unable to afford further medical treatment. Newland v. Barnhart, 05-CV-6388, 2008 WL 2405727 (W.D.N.Y. June 11, 2008); Young v. Comm'r of Soc. Sec., No. 7:13-CV-734, 2014 WL 3107960, at *11 (N.D.N.Y. July 8, 2014) (if the ALJ had relied on the lack of treatment that plaintiff received for physical limitations after 2009 to question her credibility, he should have further explored whether plaintiff's financial limitations affected her ability to follow through with treatment). "Where ... the claimant 'is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable,' the Commissioner instructs that her failure to follow prescribed treatment will be generally accepted as 'justifiable' and, therefore, such failure would not preclude a finding of disability." SSR 82–59.
>
> A claimant's inability to afford treatment is "not relevant to the veracity or credibility" of a treating source opinion. *See Newland v. Barnhart*, 05-CV-6388, 2008 WL 2405727 (W.D.N.Y. June 11, 2008). Because Plaintiff could not afford treatment during this period, this break in treatment cannot constitute a good reason for rejecting the opinions of Dr. Calabrese and Dr. Buran. This warrants remand.

(*Id.* at 17.) The Commissioner responds that the ALJ had independent reasons to reject the findings or the opinions of plaintiff's treating physicians:

4

> Plaintiff also argues that his treatment gap prior to October 2015 may have reflected an inability to pay for treatment, rather than an absence of symptoms. *See* Pl. Mem. 16–17. This interpretation of the medical record conflicts with Plaintiff's statements to examiners. As the ALJ noted, Plaintiff told Dr. Calabrese and Dr. Huckell that, prior to this car accident, his injuries had healed and he did not have problems (Tr. 15, 17, 669, 733). The ALJ could properly conclude that Plaintiff's lack of treatment before the car accident reinforced his statements to examiners that his earlier injuries had resolved.

(Dkt. No. 10-1 at 17.)

Plaintiff has the better argument here. Claimants will not have gaps in treatment counted against them when they confirm a genuine inability to obtain affordable treatment. *See* SSR 16-3p, 2016 WL 1020935, 81 FR 14166-01, at *14170 ("When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following . . . An individual may not be able to afford treatment and may not have access to free or low-cost medical services."). "It would fly in the face of the plain purposes of the Social Security Act to deny claimant benefits because he is too poor to obtain additional treatment that had proved unhelpful." *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000); *accord Burger v. Astrue*, 282 Fed. App'x 883, 884 (2d Cir. 2008) (summary order) ("In this case, however, Burger offered an explanation for her decision to seek only occasional emergency treatment: she was uninsured and could not pay for regular medical care."). At the hearing before the ALJ, plaintiff referred more than once to a lack of insurance hindering treatment. [54; *see also* 56 ("Q. So I guess you—you—you had the surgery on your knee, but there's not going to be any further surgery on your shoulder at this point that you're aware of? A. Well, it—it will be if I can get some—get them to cover me under some kind of insurance.").] At the same time, the ALJ noted that plaintiff experienced clinical regressions. [19.] The ALJ also acknowledged that a second shoulder surgery had not been performed, but he cast this fact negatively and without explaining why it had not been performed, even though plaintiff told him why it had not been performed: "However, there is no evidence to indicate that a second shoulder

5

surgery has been performed." [19.] The ALJ then proceeded to conclude that plaintiff's physicians' findings "are undermined by the more than yearlong gap in treatment from mid-June 2014 through the fall of 2015." [19.] Although the ALJ cited other reasons to discount the findings of the treating physicians, the Court is concerned about the lack of consideration for the inability to afford treatment. Under the circumstances, there is a significant chance that plaintiff was penalized improperly for an inability to afford treatments that would have provided clinical benefits. Remand is necessary to clarify the influence of plaintiff's financial status on any gaps in treatment and, in turn, on the ALJ's conclusions.

Upon remand, the ALJ is free to examine any of the other issues that plaintiff raised here. The Court will not address any other issues at this time. The Court also takes no position on the extent to which plaintiff's physicians' ultimate opinions on disability need to be separated from the underlying clinical findings.

### III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 10). The Court grants plaintiff's cross-motion (Dkt. No. 8) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order. The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: May 15, 2019